and others. Arguments not to exceed 15 minutes per side. Ms. Neff for the appellant. Good morning. May it please the court. I would like to reserve five minutes for rebuttal. Very well. Thank you. The district court committed three errors when it held, first, that Ms. McKinnon did not engage in protected activity under the Fair Labor Standards Act. When applying Pettit v. Stepping Stone, this court's decision, a jury could reasonably conclude that she did. Second, it erred when it held that Ms. McKinnon did not engage in protected activity when she complained to a vice president of human resources about gender harassment. Third, the district court erred when it failed to reinstate Ms. McKinnon's FLSA retaliation and sex retaliation claims during trial. I'd like to first address the first assignment of error. The district court erred by determining, as a matter of law, that Ms. McKinnon did not engage in protected activity under the FLSA when she persisted in advocating for the rights of a specific employee to receive overtime pay for the time that she had worked and, against the advice of her manager, accused her superior of abstracting wage and hour salaries. The parties agree that this court's decision in Pettit v. Stepping Stone controls. The language in Pettit indicates that to be considered protected activity, an assertion of FLSA rights will normally be specific to an employee and will usually be made in the interests of that employee and, thus, may be adverse to the employer's interests. The problem I have with that claim is, isn't that part of her job, FLSA? And because it's part of her job duties, is it really protective activities when they're paying actually to do that? Your Honor, I think a lot of what Ms. McKinnon did before, so in terms of the timeline, there was an FLSA study, there were recommendations made to the company, those things are within her normal course of duties. Where she stepped outside of her role, Your Honor, is starting in December of 2014 when she sent an email to her boss's boss, whose name is Jeff Miller, in which she complained about her superior, Lou Park, abstracting the FLSA and insisting that his administrative assistant remain exempt. Okay, but that's all internal. That's all within the company. I mean, she doesn't report it outside the company. She's still within the company doing their processes. Maybe it's a little unusual to go to her boss's boss, but that's still the chain of command, isn't it? Well, in terms of the chain of command, her own manager recommended that she actually go to someone else about this issue, to someone in human resources about this issue. And Your Honor, in terms of going outside of the company, she didn't go outside of the company. If she did that, I would agree that it's protective activity, but when all of it's internal and really the subject of her job, I mean, what makes it protective here? That it's extraordinary activity within the company, or what makes it protective when it otherwise would not be? Yes, Your Honor. I think in general, well, first of all, when you look to Pettit, Pettit does not indicate that the employee has to go outside of the company, and that is consistent with the case law on not only the FLSA, but in other protective activities, the employee does not have to go, for example, to the EEOC or the Department of Labor in order for it to be protected. However, in this case, it is unusual for an HR manager to not just take the word of her superior who indicates, you know, I'd like to reword my administrative assistant's job responsibilities such that the company could argue that she is classified correctly. In this case, Ms. McKinnon specifically went outside of her role and stuck her neck out so that this particular employee could not only be classified correctly, but could be paid the $45,000 that she was owed for the time that she had worked over the prior years. Isn't it in the interest of the company to pay the appropriate amount? So anytime you're within the company trying to get them to do what they're supposed to do, and it's part of your job to do that, it's hard for me to see how that... You're right, Your Honor. I can see if you are trying to get some outside entity to enforce something against your company, that's one thing. But when you're within the company and you're trying to make sure that they come to the right decision, it doesn't matter whether it's what stocks they invest in, if you're the advisor with respect to stocks, or which persons you pay this amount with respect to other legal obligations. That's trying to keep the company, in the company's interest, in compliance with the law. Certainly there is a component to make sure that the company is in compliance with the law. What if you really want them to be in compliance with the law? You really strongly want that. You go around them. You do office politics. People do office politics all the time. It's still part of their job. Well, in that case, Your Honor, what I would like to point to is the testimony of the person she went to complain to, Jeff Miller, who indicated that at this time, when Ms. McKinnon raised these concerns, raised these concerns about Lu Park obstructing the FLSA, that is when he began to allegedly notice problems with her performance. I understand that causation issue is another issue. It does go to causation, Your Honor. I'm asking about whether it's protected activity. Right. It does go to causation, Your Honor, but I also think it is relevant for whether the company viewed it as adverse. In this case, Ms. McKinnon... She's part of the company. Correct. He's higher than she is, but other people are higher than he is. That's all the company, right? Trying to work out what they have to do. Sure. In my understanding, Your Honor, in terms of his particular position, he's the individual who would have to authorize the payment. Ms. McKinnon, after this December 2014 phone call and then email, followed up in February. This particular employee had still not been paid as of February of 2015, even though the FLSA study had been completed for seven, eight, nine months. Again, she went back to Mr. Miller. She went back to Mr. Park and said, this employee is owed the $45,000. You seem to be taking the position that it's the company's interest to pay the least amount of money, but I think actually it's the company's interest to foul their legal obligations, whether they have to pay more money or not. And I see her as just advocating that the company has legal obligations here, and I think you should foul those. And that may cost you more money, but it's still in the company's interest. That's the way I kind of look at it. Is that wrong? Well, I think, Your Honor, in terms of being able to look at it in both ways, potentially that's an issue for a jury, because the defendant does argue that, for example, some of the communications between her and Lou Park or some of the communications between her and Jeff Miller can be interpreted in different ways, in terms of the company not looking at it as adverse, for example. But in this case, I think your standard, while it is, in general, the company wants their HR manager to apprise them of any concerns, which is what Ms. McKinnon and others... The company wants the human resource manager to comply and advise them what their obligations are, whether it costs money or not. What are our obligations? And they tell them to give me your fair judgment on this, right? I mean, even if it's going to cost us. Correct. And I can't see why she's not doing that, that's all. I mean, that's what she thinks she's doing, and that's what she says she's doing, and then how does that make it protective when that's her job? I think, Your Honor, in terms... I think that, like I said, the activity that occurred prior to December of 2014 is very consistent with your rendition of what she was doing and how the advice piece of it. Ms. McKinnon was not going to her boss's boss, Jeff Miller, to give him advice. She was going to him to say, Mr. Park is obstructing this. This woman needs to be paid. She's owed $45,000, and I'm insisting that you pay her. And in February of 2015, when Ms. Neal, the woman in question, had still not been paid, she again went back to them and said, I am not going to be held legally liable for this. And so I think when you take those into consideration, that's where it shows that she was stepping outside of her role as an HR manager. And L3 would like this court... I wonder if in your short remaining time you could address the gender retaliation. This case was tried, wasn't it, on the gender? It was tried on gender discrimination, Your Honor. And you got a jury against... a verdict against you, right? That's correct, Your Honor. Now you're raising a gender harassment reporting retaliation claim. What do you do with the district court's basis for throwing that out? Sure. Thank you, Your Honor. Briefly, I see you're... Could you just have a minute or two? Well, sure. I have a couple of questions as well. Okay. On the gender harassment, Your Honor, the critical issue is what occurred during Ms. McKinnon's phone call with a vice president of HR on May 27, 2015. And what the district court did hear, Your Honor, is it ignored some of the evidence that would support that on May 27, 2015, Ms. McKinnon engaged in protected activity by complaining of gender harassment. Ms. McKinnon, on July 12, 2015, sent an email to this individual, whose name is Jim Worsham, memorializing their May 27 call. The district court ignored that email. And by doing so, the district court believed that when Ms. McKinnon said in that email, this is a memorialization of our May 27 call, and in that email she says that she was complaining of harassment and bullying on account of her gender. That by ignoring that part of the email... It's ambiguous though, right? You could have said that even if she never mentioned gender in the phone call. But she indicates... The first sentence describing her phone call could be read as, I raised things because I was concerned about discrimination based on gender. Or, I raised things based on discrimination based on gender. So it's kind of ambiguous as to that characterization. Well, I think, Your Honor, in terms of the particular email and that language, neither the defendant contested that that language was protected activity, and the court also held that that language could be interpreted by a jury as protected activity. What the court did instead is it ignored the piece of that email indicating that it was memorializing the May 27 call. And when you take her deposition testimony, her declaration, and that email into consideration, a reasonable jury could conclude that Ms. McKinnon did in fact engage in protected activity on that May 27 call. What did she say in her deposition about the May 27 phone call? She was not asked directly whether or not she complained of gender discrimination during that May 27 call. However, during her deposition testimony, she did indicate in response to a question about retaliation, she did indicate that her boss was telling her she needed to look for another job approximately six weeks after she had this phone call with Mr. Worsham in which she had made a complaint of discrimination. So she did indicate in her deposition, taking that language, along with the declaration and the July 12 email, a reasonable jury could conclude that Ms. McKinnon did in fact engage in protected activity. It seems like the easiest thing for her to do is just file an affidavit that would say that in the May 27 phone call I complained of gender harassment, rather than piece all this stuff together. I wonder why she didn't do that. That certainly would create a genuine issue of material fact. Well, I think you're correct, Your Honor, in terms of the declaration. The declaration did not specifically say gender. However, what we're saying is that the court erred by not even considering the July 12 email and the fact that it referenced that it was memorializing the May 27 call. When she was asked directly at trial by the defendant whether or not she complained of gender discrimination on the May 27 call, she unequivocally testified that she did, which relates to our failure to reinstate. The trial happened after the summary judgment was entered, though, so it wasn't before the district court at that time. At that time. It was only before the district court on our motion for reinstatement. All right. I got it. I know you're out of time, so I'll be brief. I want to go back to the first issue you began with about the FLSA. Just to see if I understand your argument, it's your argument that your client was outside of or went beyond her employment responsibilities because after it became clear that she could not accomplish what she was intending to and she couldn't persuade the employer to pay these employees and the issue was addressed and decided that she continued to persist and raise the issue even though the management had made a decision she had been turned down and by so doing she was then going beyond her employment responsibilities. Is that the argument you're making here? That's part of the argument. The only thing I would correct is that definitely there had been a delay which indicated to her that the company was not willing to do what the recommendations of legal and HR had been several months before. Mr. Worsham was the person who was supposed to be leading this particular FLSA implementation and he also was not forcing the issue and making sure that Ms. Neal, for example, was reclassified correctly. That could have just been a part of the normal internal communication process. I'm trying to find out if she continued to press the issue after management had made a decision. Let me ask you something else here. Just to see if I've got the record correct, it seemed that your client was trying to obtain these overtime wages for two employees that worked under her purview but that she actually wound up advocating for up to ten employees, eight of whom were not her responsibility. Is that a basis for your argument that she wasn't simply doing her job? She was going way beyond that? I think, Your Honor, in terms of when she was not simply doing her job, it was when she was insisting that Ms. Neal, the administrative assistant that Mr. Park had refused to reclassify as non-exempt, and that's when she made the complaint to Mr. Miller and then again to Mr. Park and Mr. Miller on a phone call in February. Yes, she was initially bringing this up to make sure that the ten employees were paid. However, when she received resistance from Mr. Miller during that phone call in December and followed up with him in an email, her focus in that email was mostly on Ms. Neal and Mr. Park's obstructionism. All right. You'll have your rebuttal. Thank you, Your Honors. Good morning, Your Honors. May it please the Court. Evan Priestley representing the Appellees, collectively referred to as L3. Because all of Ms. McKinnon's arguments to this Court rely on evidence that was only entered into the record at trial, a threshold issue for this Court is whether a party may use evidence only entered into the record at trial to retroactively attack a summary judgment opinion. In the First, Second, Fourth, Fifth, Seventh, Tenth, Eleventh, and Federal circuits, they've all held that a party may not do so. Ms. McKinnon argues in a reply brief that this Court's decision in Huss v. King stands in direct opposition to all of those circuits. Okay. I mean, back up. The email of July 12th, I guess, is that the email we're talking about, was not presented to the Court in connection with the opposition to your motion for summary judgment? No, Your Honor. That evidence was in the record. But for all of the arguments— I thought you just told me all the evidence wasn't. I'm sorry. All of the arguments that she presents to this Court rely on trial evidence that was entered into the record. Well, no. She's arguing the email, July 12th. She says that that references the May 27th phone call and memorializes the phone call, and that that email itself creates a genuine issue of material fact of whether she complained about gender harassment in the May phone call. And that's before the District Court, right? Absolutely, Your Honor. And the District Court really discounted it or negated it or whatever. I think maybe just didn't believe it or whatever it was. But doesn't that email create an issue of fact as to whether she complained in May 27th? Why not? There were three separate instances in her deposition where she was asked about when she first complained of— made a protected complaint. The first back and forth in her deposition was she was asked when the first time she filed a claim. And she said, I filed a complaint with the EEOC. And then in response, she was asked, oh, so you mean after your employment? She said, no, well, I complained in my internal email to Jim Worsham on July the 12th. She was then asked separately about a retaliation claim that she made internally, well, after that July date, what she was claiming that was retaliation for. And she again claimed her July 12th email to Mr. Walker. And then in—one of the main arguments that they make to this court is that there was a written script that she had used for her phone call to Jim Worsham on May 27th. And she was specifically asked in that phone call, what, if anything, did you say beyond what's in this script? And her response in that testimony was that she ended her call with Mr. Worsham with what's seen at Exhibit 25 of her deposition at page—it's bait stamp number AM226. And there is nothing in that written script prior to that page or anything on that exhibit that includes any sort of protected complaint. So she complained of harassment, but she didn't specify it's gender harassment. That's your position, that she wasn't specific enough? No, she—well, so there's another instance. She then filed a declaration attached to her response to L3's motion for summary judgment. And in that declaration is the first time she ever made any claim at summary judgment that she had made any sort of claim of harassment even. But even in that declaration, all she says is— I didn't think there was a doubt that she complained of harassment in the May 27th phone call. The only place that that comes up is in the declaration that she attached to her motion for summary judgment. She doesn't mention that at all in her deposition testimony. How does that make a difference? Yeah, I mean, you didn't ask the question. See, I mean, this is a discovery deposition. She doesn't have to say everything in a discovery deposition. She answers the questions is what it is. And you're saying, well, because she didn't specify this and this in a discovery deposition. Well, no, it's because you didn't ask her. That doesn't mean that it doesn't exist. She was asked what else she said to Mr. Worsham on that phone call beyond what's in her written script. And what she testified was that she ended her call with Mr. Worsham with what's seen at page, with base stamp number AM-266 and nothing there. Their argument, she said, I said that I complained of harassment. And they said, well, your position, well, you're not specific enough that it's gender harassment. Gender harassment is protected, but harassment in general is not, and therefore you don't create a genuine issue of material fact. And she says, no, harassment is what I meant, or gender harassment is what I meant by harassment. And the district court did deal with that in its opinion also. It did acknowledge the fact that she had filed that declaration, and that, again, is an additional reason. Doesn't the district court have to accept her declaration? Doesn't the district court have to accept the facts in the light most favorable to the non-moving party, which here is the plaintiff? If the declaration contradicts her deposition testimony, it does not. But in this case, the district court. If it contradicts it. Well, here she says, no, it actually supplements it, explains it. It's not a direct contradiction. It's just an explanation of what it is without contradicting. That harassment, I said harassment. Actually, harassment I meant by being more specific of gender harassment. And I don't see a contradiction. You said harassment? No, you really meant gender harassment, so you contradicted yourself. Well, I don't see that. I see it as subpart of harassment. The district court dealt with that in its opinion. And that's another reason why this court should affirm the district court's opinion, because the district court said even if you had complained of harassment in that May 27th phone call, like you claim in your declaration, that's not. Didn't her script say harassment or not? It did not. It did not. Okay. And the district court, like I said, the district court did address that in its opinion. And that's another reason why this court can affirm, because the district court addressed that and said a vague claim of harassment, especially when it's couched. I mean, you have to take into consideration what she is talking about in the prior script. And it's all interoffice politics. Where does the vague allegation of harassment come if it's not from the script? She says in her declaration that she made that. She claimed that she was being harassed in that phone call. The declaration is the July 12th declaration? Is that what we're talking about or something else? No, she filed a declaration saying I complained to Mr. Worsham of harassment in the May 27th phone call. What's the date of that? What was the date of the declaration, Your Honor? It was attached to our motion for summary judgment, so I believe it was filed in the district court. Okay. Yes. And the district court dealt with that and it said even if she did complain of harassment, vague charges, even vague charges of discrimination are insufficient to raise protected activity. And here we don't even have that. You've got to say gender is the district court's theory. Correct. I mean you had to attach it to some sort of – So the issue then is whether gender was raised, gender discrimination was raised in the telephone call. And there's a declaration now that says it was raised or not. Not, Your Honor. Read me that sentence then that uses the word gender. The gender is in her July 12th email to Mr. Walker. The issue that they're raising is that she claimed gender harassment or gender discrimination in the May 27th phone call. But even in her declaration – Did she say in her declaration that that used the word gender? No. What did she say in her declaration? All right. Irrespective of what the declaration says, she did attach or rely on her email in opposition to the motion for summary judgment, did she not? That's correct, Your Honor. Okay, so why doesn't that email itself create a genuine issue of material fact of whether she raised gender harassment in the May 27th phone call? Because the decision had already been made to terminate her employment prior to her sending that July 12th email. So there can be no causal connection between that email and the decision to discharge where it was stated. But the fact that the email goes to is whether she raised it on May 27th, which is prior to the termination. And if that's the fact at issue that creates the genuine issue of material fact for the jury, then she goes to the jury, right? I mean – I guess – I mean the issue is she claims that this was – that this was in the email. I believe she does claim that this was memorializing her prior phone call. That's what she says, and we have to take the facts in the light most favorable to the non-moving party, and that's what she says the facts are. And here the judge apparently goes the other way and says, no, I don't have to accept the facts as alleged by her. But, Your Honor, even if this court were to assume that she had made a protected complaint to Mr. Worsham on that May 27th phone call, the tri-courts decision should still be affirmed. There's no evidence in the record that Mr. Walker, who was the decision maker with regard to her termination, had any idea or knew of that complaint on the May 27th phone call. And we raised that in our brief, and the only response that Ms. McKinnon offers to that is in footnote 5. Did the district judge rule on that basis? He did not. He did not address that because he initially found that there had been no protected complaint prior to that. You raised that to the district court, but there's no ruling on it? That's correct. Okay. So, if we were agreed with the plaintiff, would we remand for a ruling on that on an alternative basis? No, because this court can affirm for any basis that's within the record, so this court can still affirm on that basis. And her only response to that is to claim that that's in footnote 5 of her reply brief where she claims that that's suspect. But this court's case law is clear that knowledge of a protected activity is an essential element to a retaliation. There's no factual dispute of his lack of knowledge of this phone call? No, other than them just claiming that it's speculative that we're claiming their lack of knowledge. But he expressly testified that he did not know of any sort of protected complaint prior to his decision. They didn't rebut that? Correct. Okay, I have one question. She sent an email to Worsham on July 12th, right? Yes, sir. It provided a summary of her May 2015 phone conversation, right? That's what she alleged, yes. Which states that, quote, the bottom line is that I'm being harassed, bullied, and I believe it is based on my gender, end quote. Right? That's what she has in the July 12th email, yes, sir. So why isn't that evidence that what she said in May relied on gender? She says that's in the summary? She says, summarizing what I said, the bottom line is I'm being harassed based on my gender. That's a summary of what she says is a summary of what she said? Or am I missing something? I think the fairest reading of that email is that she is in summary of what she said to Mr. Worsham, which is everything that precedes that. I think that's the fairest reading. And she acts on it at the end now for the first time, and it's based on my gender. That's correct, Your Honor. That's a reading. But why couldn't it also be read that the bottom line is that this is based on my gender? I mean, that's also a reading, right? Yes. I mean, I would concede that that's also a reading. But again, Judge, I think even if the court were to assume— A jury might read it one way and a jury might read it another way. But even if this court were to assume that that protected complaint or a protected complaint was made to Mr. Worsham on that phone call, there's no evidence that the decision-maker knew of that before he made his decision to terminate her employment. So we still get back to the same place that the district court got to in its ruling, was that the decision to terminate was made prior to the decision-maker having any knowledge of the protected complaint. So the ultimate result is still— The decision-maker didn't have knowledge until the July 12th. Correct. Correct. With regard to Ms. McKinnon's FLSA retaliation claim, it appears from her arguments to this court and in her reply briefs that she is arguing that her email to Mr. Miller and then a subsequent I don't do jail comment or the alleged protected activities under the FLSA, neither of those instances of protected activity were raised or alleged protected activity were raised to the trial court at summary judgment. She's making those arguments for the first time here on appeal. This court's clear that an argument that was never raised to the trial court can't be used as a basis to ask to reverse the trial court's decision. But even if this court were to consider those arguments, they still fail. The FLSA retaliation provision prohibits retaliation where an employee has filed any complaint. The Supreme Court in Kasten says that filing any complaint means that it must be sufficiently clear and detailed for a reasonable employer to understand it in light of both content and context as an assertion of rights protected by the statute and a call for their protection. The content we have here is flip offhanded comment, I don't do jail. And the context is it's coming from a high level HR individual whose expressed job duties were to raise these types of issues to her superiors and work to try and figure those out. She expressly says that compliance was one of her main job duties as a high level HR individual. And as the district court acknowledged, the overwhelming majority of the comments that she makes and the interaction that she has with anybody is in the context of the company's liability. And the district court, citing this court's Pettit decision, said that that doesn't rise to the level of protected activity under the FLSA. So the trial court's decision should be affirmed for that reason. And then, Your Honors, both of these retaliation claims could also be affirmed because Ms. McKinnon cannot show evidence of pretext. Now, at summary judgment, the trial court did acknowledge or did rule that there was sufficient evidence of pretext on the gender discrimination claim such that that claim could go to trial. But this court can affirm on that basis for two reasons. One, that same evidence does not apply with equal relevance to these retaliation claims. And two, the trial court's analysis of that issue was flawed. First, Ms. McKinnon's pretext argument doesn't stand on those retaliation claims. A difference in treatment between men and women perhaps raises an inference of gender discrimination, but it does nothing to raise an inference of retaliation. And secondly, the trial court's decision can be affirmed because there's insufficient evidence. Let me ask you one thing about that. She actually complained on the phone call in May of 2015. Is that the date? May 27th of 2015 is her phone call with Mr. Worsham. Okay. Then after allegedly so complaining, in July of 2015, she's told to look for another job. Why isn't that timeframe supportive of her argument? Your Honor, because there's no evidence in the record that Mr. Walker knew of any protected complaint when he made the decision. He was the one who told her to look for a new job, and he was the decision maker with regard to her termination. And there's no evidence. In fact, his expressed testimony is that he did not know of any protected complaint before he had made the decision to terminate her employment. Okay. Well, you're not claiming that he didn't talk to anyone else in the company regarding her before he arrived at that decision. I mean, she was a fairly active employee, well-known, making disruptive complaints. Is he claiming that he didn't discuss her with anyone else before he arrived at his decision? No, I believe his testimony is that he had had discussions with other individuals throughout about her performance and such that, you know, ultimately helped him arrive at his decision to terminate her employment. But his testimony is clear that he had not known or not heard of any complaint of gender discrimination or gender harassment prior to the time he made the decision to terminate her employment. That's contained in your brief? Yes, sir. That argument? Yes, sir. What page is? What page of our brief to this Court? Where do you argue that in your brief? So I can make sure that that's an issue before us. Start that page 42, Your Honor, of our brief. Okay, thank you. Thank you, Your Honor. For all the reasons that I've stated, we'd ask that this Court affirm the District Court's summary judgment opinion on these retaliation claims. Thank you. Thank you. Your Honors, I would like to point out that at the District Court level, the defendants did not make that argument with respect to the lack of knowledge of Mr. Walker. They did make that with respect to the summary judgment motion in briefing. They did make that argument in response to our motion for reconsideration. We did address it in our brief on appeal. And there is testimony in the record from Mr. Walker in which he indicated that at the time he discussed a possible exit package for Ms. McKinnon in July of 2015 that he knew an HR investigation was going on based on a complaint Ms. McKinnon had made to Mr. Worsham. There is also testimony in the record, both from Ms. McKinnon, actually strike that it's from Mr. Walker, where he indicates that Ms. McKinnon relayed her complaint to Mr. Worsham to Mr. Walker in May, and he had a follow-up conversation with Mr. Worsham about that complaint. There is, at a minimum, a question of fact in terms of Mr. Walker's knowledge of Ms. McKinnon's gender discrimination complaint to Mr. Worsham. In May, correct. And then I just want to clarify, I believe the July 12th email that we're referencing was an email to Mr. Worsham. I think counsel incorrectly said that it was an email to Mr. Walker on July 12th, but it was in fact to Mr. Worsham. And again, summarizing the call that they had had on May 27th. With respect to the argument that L3 is making on pretext, at the summary judgment stage, the arguments by L3 on pretext were the same for the gender discrimination. In fact, they specifically indicate that they're not going to go back into pretext on the retaliation piece of it. And as this court knows, the district court held that Ms. McKinnon had presented sufficient evidence of pretext on the gender discrimination claim. And we would ask that... And you lost on that at trial. We did lose on that. We did lose on the gender discrimination claim at trial. However, there was... To a certain extent, you're asking for a retrial, except it's technically a different claim. What we're asking for... Same pretext arguments. Well, there are some additional pretext arguments which we provided at the district court level with respect to the retaliation claims in terms of timing, etc. However, we are asking this court to remand the case back to the trial court for further proceedings, which hopefully will end up resulting in trial, yes. What further proceedings are you wanting now? So, in terms of the decision by the district court determining that Ms. McKinnon did not engage in protected activity, that's as far as the district court got on the two retaliation claims at issue here. The district court didn't get to causation. It didn't get to the remaining pretext elements or anything like that. And then I did want to, if possible, briefly address the motion for reconsideration. I mean, those issues are before us. I mean, are you asking just for a limited remand to reverse the protected activity issue, and you're not asking us to remand for a trial? I mean, you know, the other defenses are all raised below. They're all raised to us, causation and pretext. I mean, we're capable of deciding them, but your preference is we don't? You're certainly capable of deciding them, Your Honor, but my understanding is that in general, the Sixth Circuit typically, when it's looking at an appeal from the district court decision, it focuses primarily on the issues that the district court reached. And in terms of the errors that we're alleging, we're alleging that the errors that he made were with respect to these particular issues. And in terms of the motion for reconsideration, because we didn't get there, I just want to point out that the testimony at issue, in particular with the sex retaliation claim that occurred at trial only for the motion for reconsideration I'm discussing here, was elicited by L3. And at that time, for the first time, L3 asked Ms. McKinnon a direct question about her May 27th complaint to Mr. Worsham. And the district court allowed this evidence to go forward and considered this evidence along with the other evidence that was presented at trial and ultimately ended up erroneously deciding that that evidence did not present issues of fact. And so we asked the court to, in conclusion that the errors of this case stemming from the district court's dismissal of the FLSA and sex retaliation claims at summary judgment, that this court conclude that the district court made these errors despite significant questions of fact and that those errors on the summary judgment decision were compounded by the district court's erroneous decision not to reinstate those claims at trial based on the evidence that was presented there. Thank you. All right. Thank you. Case is submitted.